**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3481

*Counsel for Consolidated Plaintiffs*
*Mary Loughran, Rosemary Orlando,*
*Edward Carr, Donald Saunders,*
*Michael Davis and Terrance McDonald*
*and Interim Class Counsel*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY LOUGHRAN, et al.<br><br>Plaintiffs,<br><br>v.<br><br>THE CHARLES SCHWAB CORPORATION, et al.,<br><br>Defendants.<br><br>This document relates to:<br><br>ALL ACTIONS | Case No. 2:24-cv-07344-FLA-E<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:          November 7, 2025<br>Time:          1:30 PM<br>Courtroom: 6B<br>Judge:        The Honorable Fernando L. Aenlle-Rocha |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................1

II.     STATEMENT OF FACTS ...................................................................3

     A.      Charles Schwab's Cash Sweep Programs ................................3

          1.   Schwab's Promise to Pay Retirement Accountholders a Reasonable Rate of Interest ..........................3

          2.   Schwab's Promises to Pay Clients Rates Consistent with Prevailing Economic and Business Conditions and Other CS Products ................................4

          3.   Schwab's Promise to Act in Its Clients' Best Interest................................................................................4

          4.   Schwab's Fiduciary Duties as Investment Adviser and Broker-Dealer................................................5

     B.      TD Ameritrade's Insured Deposit Account Program ..........................5

          1.   TD Acted as an Agent to Its Clients in Establishing and Maintaining the IDA ..........................................6

          2.   TD Was Obligated to Act in Its Clients' Best Interest................................................................................7

          3.   TD's Fiduciary Duties as an Investment Adviser......................7

          4.   TD's Duty to Pay Retirement Account Clients a Reasonable Rate of Interest ...........................................8

     C.      Schwab and TD Did Not Pay Reasonable Rates.................................8

III.    LEGAL STANDARD .........................................................................8

IV.     ARGUMENT.......................................................................................8

     A.      Plaintiffs Have Standing to Assert All Claims....................................8

     B.      Plaintiffs State a Claim for Breach of Contract ................................10

          1.   Schwab Agreed to Pay a Reasonable Rate to Retirement Accountholders ....................................................10

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

2.    Schwab Promised to Set CSP Rates Consistent with Prevailing Market and Business Conditions......................14

3.    Defendants Promised to Operate the Sweep Programs in Their Clients' Best Interests.................................18

4.    Plaintiffs Sufficiently Pled Defendants' Breach of Their Contractual Promises........................................18

5.    Plaintiffs Have Not Waived Their Claims or Ratified Defendants' Breach.........................................21

6.    Plaintiffs Have Sufficiently Pled Injury...................................23

C.    Plaintiffs State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing ...........................................24

1.    Plaintiffs May Pursue Their Implied Covenant Claim in the Alternative to Their Contract Claim ....................26

2.    The Implied Covenant Claim Is Not a Fraud Claim.................26

D.    Plaintiffs State a Claim for Breach of Fiduciary Duty........................27

1.    Defendants Owed Fiduciary Duties to All Sweep Program Clients..................................................................27

2.    Defendants Agreed to Act as "Agents" Concerning the CSPs ....................................................................29

3.    Defendants Exercised Control and Discretion Over Both Sweep Programs.............................................................31

E.    Plaintiffs Sufficiently Allege Unjust Enrichment ...............................32

V.    CONCLUSION...........................................................................................33

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                          **PAGE(S)**

*300 DeHaro St. Invs. v. Dep't of Hous. & Cmty. Dev.*,
  161 Cal. App. 4th 1240 (2008) ...............................................................................11

*A.B.C. Distrib. Co. v. Distillers Distrib. Corp.*,
  154 Cal. App. 2d 175 (1957) ..................................................................................17

*Antczak v. TD Ameritrade Clearing, Inc.*,
  2018 WL 2298494 (E.D. Pa. May 21, 2018)..........................................................31

*Apollo Cap. Fund LLC v. Roth Cap. Partners, LLC*,
  70 Cal. Rptr. 3d 199 (2007) ...................................................................................30

*Arevalo v. Bank of Am. Corp.*,
  850 F. Supp. 2d 1008 (N.D. Cal. 2011)..................................................................10

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ..................................................................................32

*Astra USA, Inc. v. Santa Clara Cnty., Cal.*,
  563 U.S. 110 (2011)................................................................................................13

*Barta v. Kindschuh*,
  518 N.W.2d 98 (Neb. 1994) ...................................................................................30

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007) ...................................................................................9

*Beatbox Music Pty, Ltd. v. Labrador Ent., Inc.*,
  2020 WL 6468447 (C.D. Cal. Jul. 17, 2020)..............................................29, 30

*Beaver v. Omni Hotels Mgmt. Corp.*,
  2021 WL 1174719 (S.D. Cal. Mar. 29, 2021) ......................................................16

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.,
  Inc.*,
  448 F.3d 573 (2d Cir. 2006) ...................................................................................21

*Bianco v. Warner*,
  562 F. Supp. 3d 526 (C.D. Cal. 2021) .....................................................................8

*Bissell v. Merrill Lynch & Co., Inc.*,
  937 F. Supp. 237 (S.D.N.Y. 1996) ........................................................................30

*Boat Owners Ass'n of U.S. v. Sea Ventures of Cal., Inc.*,
2000 WL 33179449 (C.D. Cal. Aug. 7, 2000) ....................................................21

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ............................................................................20

*Brighton Trs. v. Transamerica Life Ins. Co.*,
2019 WL 6315541 (C.D. Cal. Aug. 28, 2019) ..................................................25

*In re Burgess*,
106 B.R. 612 (Bankr. D. Neb. Jul. 27, 1989) ..................................................27

*Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*,
2012 WL 12883616 (C.D. Cal. Feb. 23, 2012) ..................................................29

*Cerco Bridge Loans 6 LLC v. Schenker*,
768 F. Supp. 3d 559 (S.D.N.Y. 2025) ..............................................................26

*Chamber of Commerce v. DOL*,
885 F.3d 360 (5th Cir. 2018) ............................................................................13

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
68 Cal. App. 4th 445 (1998) ............................................................................17

*City of Los Angeles v. Wells Fargo & Co.*,
22 F. Supp. 3d 1047 (C.D. Cal. 2014) ..............................................................33

*Claridge v. N. Am. Power & Gas, LLC*,
2015 WL 5155934 (S.D.N.Y. Sept. 2, 2015) ..................................................14

*Cusano v. Klein*,
280 F. Supp. 2d 1035 (C.D. Cal. 2003), *aff'd*, 153 F. App'x 998
(9th Cir. 2005)..................................................................................................30

*Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*,
2020 WL 639613 (D. Neb. Feb. 11, 2020), *aff'd*, 984 F.3d 595 (8th
Cir. 2020) ........................................................................................................22

*In re Daisy Sys. Corp.*,
97 F.3d 1171 (9th Cir. 1996) ......................................................................26, 29

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ..........................................................................33

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

iv

*DeBlasio v. Merrill Lynch & Co. Inc.*,
    2009 WL 2242605 (S.D.N.Y. July 27, 2009)..........................................23, 24, 33

*Dey v. Robinhood Markets Inc.*,
    2025 WL 1322716 (N.D. Cal. Apr. 28, 2025)................................................*passim*

*Dick v. Koski Pro. Group, P.C.*
    950 N.W.2d 321 (2020) ................................................................................24

*In re Drexel Burnham Lambert Group, Inc.*,
    157 B.R. 539 (S.D.N.Y. 1993) .....................................................................23

*Duffy v. Cavalier*,
    215 Cal. App. 3d 1517 (Ct. App. 1989)........................................................30

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    546 F.3d 981 (9th Cir. 2008) .......................................................................10

*Eagle Partners, L.L.C. v. Rook*,
    921 N.W.2d 98 (2018) ..................................................................................21

*EFG Bank AG, Cayman Branch v. Transamerica Life Ins. Co.*,
    2017 WL 3017596 (C.D. Cal. July 10, 2017)..........................................25, 26

*Encore Rehab. Servs., LLC v. Moorhead Operations LLC*,
    2019 WL 13235827 (D. Minn. Feb. 24, 2019)..............................................33

*Fowler v. Wells Fargo Bank, N.A.*,
    2017 WL 3977385 (N.D. Cal. Sept. 11, 2017)..............................................11

*Gerhardt v. Weiss*,
    247 Cal. App. 2d 114 (Ct. App. 1966)..........................................................29

*Glenn v Hyundai Motor Am.*,
    2016 WL 7507766 (C.D. Cal. Nov. 21, 2016) ..............................................32

*Go Maps, Inc. v. Ins. Claims Assocs. Agency Inc.*,
    2023 WL 3149267 (C.D. Cal. Feb. 28, 2023) ..............................................32

*In re Google Assistant Priv. Litig.*,
    546 F. Supp. 3d 945 (N.D. Cal. 2021)..........................................................23

*Grochowski v. Phoenix Constr.*,
    318 F.3d 80 (2d Cir. 2003) ...........................................................................13

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

v

*Gurfein v. Ameritrade, Inc.*,
    312 F. App'x 410 (2d Cir. 2009) ..........................................................................13

*Gutierrez v. Wells Fargo & Co.*,
    622 F. Supp. 2d 946 (N.D. Cal. 2009) ..........................................................21, 25

*Haggarty v. Wells Fargo Bank, N.A.*,
    2011 WL 445183 (N.D. Cal. Feb. 2, 2011) ........................................................25

*Hauptman v. Interactive Brokers*,
    2018 WL 4278345 (S.D.N.Y. June 12, 2018) ....................................................12

*Hawkins v. Shimano N. Am. Bicycle Inc.*,
    729 F. Supp. 3d 989 (C.D. Cal. 2024) ................................................................10

*Herink v. Bluestem Energy Sols., LLC*,
    999 N.W.2d 147 (2023) ......................................................................................14

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    639 F. Supp. 3d 944 (N.D. Cal. 2022) ................................................................22

*Hopgood v. Experian Information Solutions, Inc.*,
    716 F. Supp. 3d 845 (C.D. Cal. 2024) ................................................................23

*Incase Designs, Inc. v. Mophie, Inc.*,
    2013 WL 12173931 (N.D. Cal. July 1, 2013) ....................................................26

*JoAnn Homes at Bellmore, Inc. v. Dworetz*,
    25 N.Y.2d 112 (1969) ........................................................................................15

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
    250 F. Supp. 3d 460 (N.D. Cal. 2017) ..................................................................9

*Johnson v. Providence Health & Servs.*,
    2018 WL 1427421 (W.D. Wash. Mar. 22, 2018) ..................................................9

*Jordan v. Wonderful Citrus Packing LLC*,
    2018 WL 4350080 (E.D. Cal. Sept. 10, 2018) ....................................................32

*Klug v Watts Regulator Co.*,
    2015 WL 13893247 (D. Neb. Dec. 29, 2015) ....................................................32

*Knowles v. TD Ameritrade Holding Corp.*,
    427 F. Supp. 3d 1070 (D. Neb. Nov. 15, 2019).............................................27, 28

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Leboce, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   709 F.2d 605 (9th Cir. 1983) ......................................................................27, 30, 31

*In re LPL Financial Cash Sweep Litigation*,
   2025 WL 2103545 (S.D. Cal. June 30, 2025) .....................................................25

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) ..............................................................................9

*Mihara v. Dean Witter & Co.*,
   619 F.2d 814 (9th Cir. 1980) ..............................................................................31

*Min v. Selene Fin., LP*,
   2024 WL 1521239 (N.D. Cal. Apr. 8, 2024).......................................................24

*Mirkin v. Viridian Energy, Inc.*,
   2016 WL 3661106 (D. Conn. July 5, 2016) ........................................................14

*Monaco v. Bear Stearns Residential Mortg. Corp.*,
   554 F. Supp. 2d 1034 (C.D. Cal. 2008) ..............................................................17

*Moncada v. W. Coast Quartz Corp.*,
   164 Cal. Rptr. 3d 601 (2013) ..............................................................................15

*Morris v. Walmart, Inc.*,
   2024 WL 3784113 (D. Mont. Aug. 13, 2024)......................................................12

*Neurobrands, LLC v. Am. Bottling Co.*,
   2022 WL 17219991 (C.D. Cal. Feb. 25, 2022) ...................................................24

*O'Connor v. Henkel Corp.*,
   2015 WL 5922183 (E.D.N.Y. Sept. 22, 2025) ....................................................12

*Olsen v. Nelnet, Inc.*,
   392 F. Supp. 3d 1006 (D. Neb. 2019)..................................................................11

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
   2016 WL 6393503 (N.D. Cal. Oct. 28, 2016) .....................................................26

*Parrish v. Nat'l Football League Players Ass'n*,
   534 F. Supp. 2d 1081 (N.D. Cal. 2007)...............................................................10

*Pressman v. United States*,
   33 Fed. Cl. 438 (1995) ........................................................................................13

*Rodman v. Safeway, Inc.*,
2011 WL 5241113 (N.D. Cal. Nov. 1, 2011) ......................................................16

*Roling v. E\*Trade Securities LLC*,
860 F. Supp. 2d 1035 (N.D. Cal. 2012) ...............................................................23

*Schertzer v. Bank of Am., NA*,
109 F.4th 1200 (9th Cir. 2024) .............................................................................15

*Schreiber Bros. Hog Co., LLC v. Schreiber*,
980 N.W.2d 890 (2022) ........................................................................................33

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
119 F. Supp. 3d 1213 (C.D. Cal. 2015) ...............................................................28

*Shivkov v. Artex Risk Solutions, Inc.*,
974 F.3d 1051 (9th Cir. 2020) ..............................................................................17

*Silva v. Evonik Corp.*,
2020 WL 12574912 (D.N.J. Dec. 30, 2020)........................................................20

*Simple Design Ltd. v. Enerjoy Ltd.*,
710 F. Supp. 3d 817 (C.D. Cal. 2024) .................................................................31

*Solomon v. Jacobson*,
2016 WL 6023821 (C.D. Cal. July 6, 2016).........................................................10

*Stark v. Soteria Imaging Servs., Inc.*,
276 F. Supp. 2d 989 (D. Neb. 2003)...............................................................22, 31

*Steenwyk v. Steenwyk*,
2024 WL 2206338 (C.D. Cal. Mar. 28, 2024)......................................................26

*Stromquist v. Progressive Universal Ins. Co.*,
2023 WL 2537838 (D. Neb. Mar. 16, 2023) ........................................................24

*Su v. Henry Global Consulting Grp.*,
2021 WL 2712366 (C.D. Cal. Jul. 1, 2021)..........................................................27

*Thompson v. Flores*,
2024 WL 4052814 (D. Neb. Sept. 5, 2024)..........................................................10

*Thompson v. Transamerica Life Ins. Co.*,
2018 WL 6790561 (C.D. Cal. Dec. 26, 2018).........................................................9

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Tibble v. Edison International*,
729 F.3d 1110 (9th Cir. 2013) ................................................................20

*In re Transact, Inc.*,
2014 WL 3888230 (C.D. Cal. Aug. 6, 2014) ..........................................22

*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
2014 WL 2199428 (S.D.N.Y. May 23, 2014) ..........................................21

*Umland v. PLANCO Fin. Servs., Inc.*,
542 F.3d 59 (3d Cir. 2008) ....................................................................13

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
2021 WL 240737 (S.D.N.Y. Jan. 25, 2021) ...................................*passim*

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
2025 WL 2222741 (S.D.N.Y. Aug. 5, 2025)......................................12, 21

*Vanguard Logistics Servs. (USA) Inc. v. Groupage Servs. of New England, LLC*,
2023 WL 4843070 (C.D. Cal. July 28, 2023).........................................21

*Veritas Techs. LLC v. Cushman & Wakefield, Inc.*,
2022 WL 222527 (N.D. Cal. Jan. 25, 2022).............................................32

*Vogt v. State Farm Life Ins. Co.*,
963 F.3d 753 (8th Cir. 2020) ..................................................................16

*Welch v. TD Ameritrade Holding Corp.*,
2009 WL 2356131 (S.D.N.Y. July 27, 2009)......................................23, 24

*Welchert v. Am. Cyanamid, Inc.*,
59 F.3d 69 (8th Cir. 1995) ......................................................................12

*In Re Wells Fargo Cash Sweep Litig.*,
2025 WL 1785315 (N.D. Cal. June 27, 2025)..................................*passim*

*Woodruff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
1989 WL 224581 (D. Neb. Jul. 14, 1989).................................................31

*Woodruff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
709 F. Supp. 181 (D. Neb. 1989).............................................................30

*Yang v. Pan*,
2025 WL 819605 (C.D. Cal. Jan. 6, 2025)...............................................32

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

**STATUTES**

Cal. Civ. Code § 1641...............................................................................................13, 15

Cal. Civ. Code § 1643....................................................................................................15

Cal. Civ. Code § 1654....................................................................................................17

**TREATISES**

Restatement (Second) of Contract § 203(c) (1981)....................................................17

**OTHER AUTHORITIES**

26 C.F.R. § 54.4975-6(b)(3)(i).....................................................................................12

*Error*, Black's Law Dictionary (12th ed. 2024) ........................................................22

FINRA Regulatory Notice 11-02 (Jan. 2011), *available at*
https://www.finra.org/sites/default/files/NoticeDocument/p122778.
pdf. ........................................................................................................................28

SEC Regulation Best Interest:The Broker-Dealer Standard of
Conduct, 84 Fed. Reg. 33318 (July 12, 2019),
17 C.F.R. § 240.15l-1 .............................................................................7, 27, 28

SEC Interpretation Regarding Standard of Conduct for Investment
Advisers, 84 Fed. Reg. 33669 (July 12, 2019), 17 C.F.R. 276.....................27, 28

## TABLE OF ABBREVIATIONS

| Short Form | Definition |
|---|---|
| ¶ or Complaint | Consolidated Class Action Complaint, filed on May 23, 2025 (ECF No. 83) |
| Cash Sweep Programs or CSP | Schwab's Cash Sweep Programs, including the "Cash Features" known as the Bank Sweep and Bank Sweep for Benefit Plans, and as otherwise defined in ¶33 |
| Charles Schwab Banks | Charles Schwab Bank, Charles Schwab Premier Bank, and Charles Schwab Trust Bank |
| D.Ex. | Exhibit to the Declaration of Jason J. Mendro in Support of Defendants' Motion to Dismiss the Consolidated Class Action Complaint (ECF No. 89) |
| Defendants | Defendants The Charles Schwab Corporation, Charles Schwab & Co., TD Ameritrade, Inc., and TD Ameritrade Clearing, Inc., as defined in ¶27 |
| DOL | Department of Labor |
| Ex. | Exhibit to the Declaration of Salvatore J. Graziano in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss the Consolidated Class Action Complaint, filed herewith |
| IAA | Investment Advisers Act of 1940 |
| IDA | TD Ameritrade FDIC Insured Deposit Account |
| IRC | Internal Revenue Code |
| MTD or Motion | Defendants' Motion to Dismiss the Consolidated Class Action Complaint (ECF No. 87) |
| Program Banks | Charles Schwab Banks and TD Banks, as defined in ¶34 |
| Reg. BI | SEC's Regulation Best Interest: The Broker-Dealer Standard of Conduct, 17 C.F.R. § 240.15l-1 (2019) |
| Schwab or Charles Schwab | Defendant The Charles Schwab Corporation and Defendant Charles Schwab & Co., as defined in ¶27 |
| SIP | Schwab Intelligence Portfolio, as described in ¶¶213-15 |
| Sweep Programs | CSP and TD Sweep Program, collectively |
| TD | Defendants TD Ameritrade, Inc. and TD Ameritrade Clearing, Inc. |
| TD Bank | The Toronto-Dominion Bank |
| TD Banks | TD Bank and TD Bank USA |

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

xi

| TD Sweep Program | TD Ameritrade FDIC Insured Deposit Account Cash Sweep Program, as defined in ¶118 |
|---|---|
| TDAIM | TD Ameritrade Investment Management |

*Any terms not contained in this chart have the same meaning ascribed to them in the Complaint.

## I.     __INTRODUCTION__[1]

Defendants breached their contractual, implied, and fiduciary duties to clients in their Sweep Programs, and unjustly enriched themselves, by drastically under-paying interest to them.  In operating their Sweep Programs, Defendants agreed to serve as their clients' "agent" and act in their "best interest."  Schwab also promised to pay IRA clients a "reasonable rate" of interest on cash sweep balances, and promised to pay all sweep clients a rate consistent with "prevailing market and business conditions."  Instead, Defendants paid *de minimis* rates while earning significant returns on the cash as market interest rates soared.

Defendants underpaid interest to sweep account clients by sweeping their cash primarily to affiliated—rather than third-party—banks, thus controlling and increasing profits to themselves, affiliates, and banks to whom they were contractually obligated to channel deposits following Schwab's acquisition of TD. As the Federal Funds Rate and yield on Treasury Bills climbed from nearly 0% to above 5%, Schwab paid CSP clients rates as low as 0.01% to a maximum of 0.45%, while TD sweep rates in the lowest tier were only 0.01% to a maximum of 0.34%

Defendants' attempts to dismiss their contractual, implied and fiduciary duties should be rejected.  ***First,*** Defendants assert Schwab told clients the CSP rate would be "as low as possible" and even "zero."  But, as Defendants concede (MTD at 14), the disclosure the rate could be "as low as possible" was "modified" by the provision that such rates would be "consistent with prevailing market and business conditions." ¶75. Contrary to Defendants' assertions (MTD at 1), Plaintiffs do not "mischaracterize" or "disregard" Defendants' representations, but harmonize them. Moreover, Schwab's disclosure to its clients that the interest rate could be "zero" simply warned there may be circumstances—such as in stress situations during the

---

[1] Unless otherwise indicated, all internal citations and quotations are omitted and emphasis is added.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

pandemic—when market interest rates were close to zero and that clients' sweep interest rates would then also be close to zero. Such disclosures reasonably conveyed that CSP rates would fluctuate with changes in market rates. Here, the Sweep Program rates rose only slightly during the Class Period, then plateaued, as market rates continued to sharply increase.

Defendants also try to characterize their own contracts' language promising that "Retirement and other benefit plan accounts will be paid a reasonable rate consistent with applicable legal and regulatory requirements" as a mere federal regulatory requirement. Not so. This was a contractual promise that clients "*will* be paid" a reasonable rate.

***Second***, Defendants assert Plaintiffs cannot represent accountholders who had advisory relationships with Defendants because Plaintiffs did not. But Plaintiffs have standing to bring their own claims against Defendants and, since their claims arise out of similar terms and disclosures as class members who had advisory relationships with Defendants, Plaintiffs represent them on a classwide basis.

***Third***, Defendants assert Plaintiffs waived their right to challenge the sweep rates. But Defendants are wrong that the contractual provision asking Plaintiffs to notify them of any calculation "errors" within 10 days applied to the misconduct at issue. Instead, contract law grants Plaintiffs the ability to continue to receive partial payment of the interest due to them while maintaining a right to obtain the remainder.

Defendants further assert that Plaintiffs' implied covenant claim is duplicative of their contract claim. But Plaintiffs may bring contract and implied covenant claims since the parties dispute the terms of the contracts. Defendants also assert they did not owe Plaintiffs any fiduciary duties, but they concede the existence of a duty turns on control over the given account. Defendants had complete control over their clients' cash sweep accounts and owed them all fiduciary duties, in addition to the duties they owed clients with whom they had advisory relationships.

## II.    STATEMENT OF FACTS

### A.    Charles Schwab's Cash Sweep Programs

Charles Schwab offers its clients a "Cash Features Program," whereby cash in eligible Schwab accounts is automatically "swept" into one of several interest-bearing accounts ("Cash Features"). ¶33. The Cash Features include (i) the "Bank Sweep" Feature (for non-retirement accounts); and (ii) the "Bank Sweep for Benefit Plans" Features (for retirement accounts). *Id.*

Schwab made the Bank Sweep Feature the default option for all new accounts in 2016. ¶35. In 2018 and 2019, Schwab eliminated its money market fund sweep option for most clients and transferred clients into the lower-yielding Bank Sweep Feature. *Id.* Schwab's CFO acknowledged this was "accretive to revenue" because Schwab only earned 0.5% fees on money market funds, whereas its net interest margin on its clients' cash was over 2%. ¶35. This change reduced Schwab clients' interest rate on cash deposits from 1.5% to 0.3% (*id.*) and a 2019 analyst report estimated Schwab clients lost nearly $2.5 billion in interest annually. ¶36.

The CSP sweeps client cash into accounts at one of five Program Banks that are either affiliated with Schwab or TD Bank, to whom Schwab was contractually bound to channel clients' money, after Schwab acquired TD Ameritrade from TD Bank in October 2020. ¶¶29, 34. Schwab selects the Program Banks. For the Single-Bank CSP, Charles Schwab Bank is the only option and for the Multiple-Bank CSP, Schwab assigns up to three Program Banks per account. ¶37.

The CSPs allow Defendants and the Program Banks to profit from the "spread" between the *de minimis* interest rates Schwab set for and paid its clients and the interest earned on the clients' cash balances. ¶39.

#### 1.    Schwab's Promise to Pay Retirement Accountholders a Reasonable Rate of Interest

In its Cash Features Disclosure Statements, Schwab stated that "Retirement and other benefit plan accounts will be paid a reasonable rate consistent with

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS                                        3

applicable legal and regulatory requirements." ¶42.

### 2. Schwab's Promises to Pay Clients Rates Consistent with Prevailing Economic and Business Conditions and Other CS Products

Schwab promises all clients that it sets CSP interest rates "consistent with prevailing market and business conditions." ¶¶72-73. The Cash Features Disclosure Statements state that interest rates might be set "as low as possible," but that statement is qualified by Schwab's promise that rates would be consistent with "prevailing market and business conditions." ¶¶74-76.

Schwab also tells clients that the CSP rates "***can be higher or lower*** than interest rates available for other Cash Features." ¶77. Plaintiffs never received rates higher than those paid on other Cash Features, which were generally many multiples higher than the CSP rates. ¶78. The Money Fund Sweep Feature that invests cash in a CS Money Fund paid rates as high as 5% during the Class Period and the Schwab Intelligent Portfolio sweep program paid a rate of 3.93% as of May 2025—***78 times higher*** than the 0.05% CSP rate. *Id.*

### 3. Schwab's Promise to Act in Its Clients' Best Interest

For all brokerage clients in the CSP, Schwab acknowledged in account agreements and disclosures its duty to act in its clients' best interest and not put its interests ahead of its clients when it makes a "recommendation." ¶79; Ex.1 at 1. Schwab's Best Interest Disclosure gives examples of conflicts of interest impacting its ability to put its clients' interests ahead of its own when making a recommendation. ¶80. Those examples include the "spread" between what Schwab or its affiliate banks earn from investing or lending its clients' cash, compared to what it pays its clients in interest. *Id.* Schwab thereby acknowledged that the swept cash to the Program Banks constitutes a "recommendation." *Id.*

The Schwab "Relationship Summary: Broker-Dealer" and "Relationship Summary: Investment Advisory," similarly acknowledge Schwab's duty to act in

clients' best interest when making a "recommendation," and also gives the "spread" Schwaband affiliated banks' earn on client cash as an example of a conflict of interest impacting its recommendations. ¶¶81, 87; Exs.2, 3.

### 4. Schwab's Fiduciary Duties as Investment Adviser and Broker-Dealer

Schwab owed fiduciary duties to all its clients, both as an investment adviser and as a broker-dealer. ¶83. Schwab is a registered investment adviser bound by the fiduciary duties imposed by the IAA to act in its clients' best interests and place their best interests ahead of its own. ¶84. Accordingly, for all advisory (or managed) accounts, Schwab was required to act as a fiduciary to its clients with respect to all aspects of the accounts, including the CSP. *Id.*

Second, Schwab undertook to serve as its clients' agent with respect to the establishment and operation of the CSP. ¶¶87, 97-98. Schwab had *de facto* control over its clients' sweep accounts because it selected the Program Banks; had discretion to change the Program Banks; established the accounts; made deposits to and withdrawals from the accounts; set and changed the interest rates on each Cash Sweep Feature; ensured that non-affiliated banks would not pay an interest rate higher than the rate its affiliated banks paid; chose which specific Cash Features were available to its clients; determined whether clients were eligible for each Program option; had the ability to terminate a client's use of the CSP; and denied its clients the ability to communicate directly with or instruct the Program Banks.¶¶99-107.

### B. TD Ameritrade's Insured Deposit Account Program

Before Schwab acquired TD Ameritrade, TD maintained its own "sweep program," with its parent and affiliate TD Bank holding most cash sweep deposits, including in an FDIC Insured Deposit Account ("IDA"). ¶¶117-18.[2]

---

[2] The other options, "TD Ameritrade Cash" and "Money Market Funds" are not at issue here. ¶118.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO                                        5
DEFENDANTS' MOTION TO DISMISS

TD clients were automatically placed in the IDA as the default "Designated Sweep Vehicle," unless they affirmatively selected an alternative—Money Market Funds or TD Ameritrade Cash. ¶119. TD discouraged the selection of alternatives by suggesting they were inappropriate or less desirable than the IDA. ¶120.

The TD Sweep Program swept client cash into interest-bearing deposit accounts at Program Banks with whom TD was either affiliated or contractually bound to channel client money. ¶121. Under the TD Sweep Program, TD, acting as its clients' "agent," opened accounts on its clients' behalf at the Program Banks. ¶123. TD, in its discretion and as agent, selected the Program Banks, and determined the order of the Program Banks in accepting funds based on contractual arrangements between TD and the Program Banks. *Id.*

Interest rates paid to TD clients in the TD Sweep Program were set by TD, and the rates were the same across Program Banks. ¶124. In its disclosures, TD stated it established the interest rate for the TD Cash Option "based on prevailing market and business conditions." ¶126; D.Ex.E. These disclosures promised the rates paid by all Program Banks would be the same, ¶124, and reasonable clients would understand all TD Cash Sweep rates were based on prevailing market and business conditions. ¶218.

Under the TD Sweep Program, the Program Banks profited from the "spread" between the *de minimis* rates they set for their clients and the interest they earned on client cash. ¶127. TD profited from a volume-based fee from 0.85% to 1.20% it received from unaffiliated banks, and a fee of up to $100 per account from affiliated banks. ¶128. TD's affiliated banks pocketed the difference between the artificially-low rates TD set for its clients and the interest affiliated banks earned by lending out clients' deposits. ¶129.

### 1. TD Acted as an Agent to Its Clients in Establishing and Maintaining the IDA

TD assumed fiduciary duties to its IDA clients because it agreed to serve as

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS                                                          6

an agent on their behalf with respect to their accounts and it exercised control and discretion over their accounts. ¶¶146-49.

### 2.    TD Was Obligated to Act in Its Clients' Best Interest

In addition to the fiduciary duties imposed by its agency relationship, TD also had obligations as a broker-dealer under the "Applicable Rules," including the SEC Rules that TD incorporated into its Client Agreements. ¶150. The Applicable Rules included TD's obligation to comply with Reg. BI in the operation and recommendation of the IDA. ¶151. That included the obligation to "consider reasonable alternatives," including with respect to whether a particular cash sweep program aligned with the client's best interests. 84 Fed. Reg. 33318 (July 12, 2019), 17 C.F.R. § 240.15l-1. ¶151.

TD also acknowledged its duties as a broker-dealer under Reg. BI in account agreements and disclosures such as its Form CRS, which acknowledged TD's duty to act in its clients' best interest when making a recommendation as a broker-dealer. ¶153; Ex.4. TD's disclosures offered examples of conflicts of interest in the way it makes money "because they can affect the recommendations we provide you." ¶154; Ex.4 at 3. Like Schwab, TD described its Sweep Program as an example of "a recommendation as your broker-dealer." ¶155; Ex.4 at 3.

### 3.    TD's Fiduciary Duties as an Investment Adviser

TD also owed fiduciary duties to its clients as an investment adviser. TDAIM was a registered investment adviser, and an affiliate of TD that provided investment advisory services to clients enrolled in the TD Sweep Program. ¶156. Pursuant to the TDAIM Service Agreement, a portion of an advisory client's portfolio was kept in cash, and for nontaxable accounts was automatically swept into the IDA. ¶158. TDAIM's automatic maintenance of advisory client funds in cash, and its automatic enrollment of clients into the IDA constituted investment advice. *Id.*

TDAIM's Form CRS offered examples of conflicts of interest in the way it makes money as investment adviser "because they can affect the investment advice

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO                    7
DEFENDANTS' MOTION TO DISMISS

we provide you." ¶159; Ex.5 at 2. Included as an example of such a conflict was the marketing fee the Program Banks paid to TD when TDAIM swept its customers' cash to those Program Banks. *Id.* TDAIM further explained how the profit or "spread" earned by the Program Banks on TD clients' accounts constituted a conflict with TD's fiduciary duties. ¶160.

### 4.    TD's Duty to Pay Retirement Account Clients a Reasonable Rate of Interest

TD acknowledged its fiduciary duty to pay its retirement account holders a reasonable rate of interest. ¶161-62. That duty arises out of contract and coincides with IRC Section 4975, which provides an exemption for prohibited transactions for a "disqualified person," i.e., "a person providing services to the plan," where the plan's deposits bear "a reasonable interest rate." *See* ¶¶162-64 (explaining the exemption where the plan's deposits bear "a reasonable interest rate.).

### C.    Schwab and TD Did Not Pay Reasonable Rates

Schwab's and TD's sweep rates were unreasonably low and did not properly account for prevailing rates. ¶¶193-98, 202, 205-06, 209. By paying unreasonably low rates, Defendants unjustly enriched themselves at their clients' expense. ¶11.

## III.    LEGAL STANDARD

On a motion to dismiss, the Court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Bianco v. Warner*, 562 F. Supp. 3d 526, 530 (C.D. Cal. 2021). Where plaintiffs' complaint "contain[s] sufficient factual matter ... to 'state a claim to relief that is plausible on its face,'" the court must deny any motion to dismiss. *Id.*

## IV.    ARGUMENT

### A.    Plaintiffs Have Standing to Assert All Claims

Defendants assert that Plaintiffs lack standing to represent persons who had advisory relationships with Defendants because Plaintiffs were not advisory clients. MTD at 10. But Plaintiffs have standing to assert all claims. Defendants do not

---

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO                    8
DEFENDANTS' MOTION TO DISMISS

dispute Plaintiffs' standing to bring breach of contract and fiduciary duty claims arising from their participation in the Sweep Programs. Defendants' standing arguments therefore fail, because "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015).

The Ninth Circuit has held that "representative parties who have a direct and substantial interest have standing," and "the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Melendres*, 784 F.3d at 1262. Thus, "any issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing." *Id.*

Standing is easily satisfied here. Plaintiffs were parties to the contracts at issue (¶¶16-21, 54-60, 142-45); Defendants owed fiduciary and other duties to each Plaintiff, regardless of the type of account held (¶¶61-62, 72-116, 146-68); and Plaintiffs suffered financial injury directly traceable to Defendants' breaches (¶¶185-86, 260, 267, 271, 276). *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Plaintiffs do not need to have held advisory accounts with Defendants to assert claims on behalf of advisory accountholders. Indeed, since *Melendres*, district courts often "dismiss challenges to a plaintiff's standing to bring claims on behalf of absent class members concerning different … investments." *Thompson v. Transamerica Life Ins. Co.*, 2018 WL 6790561, at *5 (C.D. Cal. Dec. 26, 2018); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 465 (N.D. Cal. 2017) (plaintiffs had standing to bring claims "on investment options [in] which they did not invest"); *Johnson v. Providence Health & Servs.*, 2018 WL 1427421, at *4 (W.D. Wash. Mar. 22, 2018) (plaintiff's standing over plaintiff-owned mutual fund

conferred right to assert claims regarding other mutual funds).[3]

### B.    Plaintiffs State a Claim for Breach of Contract

Plaintiffs sufficiently plead breach of contract based on the plain language of Defendants' agreements, and disclosures incorporated by reference therein. *E.g.*, ¶¶38, 72-81, 126, 130. Schwab's client agreements are governed by California law (D.Ex.A at 38; ¶115), and TD's client agreements (before Schwab's acquisition) are governed by Nebraska law. D.Ex.D at 9; ¶247. Under both, the elements of breach of contract are the same: "the existence of the contract, performance by or excuse for nonperformance by the plaintiff, breach by the defendant, and damages." *Solomon v. Jacobson*, 2016 WL 6023821, at *8 (C.D. Cal. July 6, 2016); *Thompson v. Flores*, 2024 WL 4052814, at *4 (D. Neb. Sept. 5, 2024).

### 1.    Schwab Agreed to Pay a Reasonable Rate to Retirement Accountholders[4]

In its "Cash Features Program Disclosure Statement," Schwab promised that "[r]etirement and other benefit plan accounts ***will be paid a reasonable rate*** consistent with applicable legal and regulatory requirements." ¶¶42, 63; D.Ex.C at

---

[3] Defendants' cases are distinguishable. *See Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989, 1009 (C.D. Cal. 2024) (plaintiffs lacked standing to bring claims under laws of all 50 states when they only made purchases in four); *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1017 (N.D. Cal. 2011) (plaintiffs alleged they were ***involuntarily*** enrolled in the challenged program, but sought to assert entirely dissimilar claims on behalf of absent class members who ***voluntarily*** enrolled in the program and were unable to use it); *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1094 (N.D. Cal. 2007) (plaintiffs failed pleading requirement because they did not sign contracts at issue); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981 (9th Cir. 2008) (no subject matter jurisdiction on behalf of all members of class and sub-classes). *Arevalo* was decided prior to *Melendres*, but still recognized that "some differences between the claims of class representatives and the claims of class members should not result in a successful standing challenge." 850 F. Supp. 2d at 1018.

[4] Plaintiffs do not allege that TD's agreements expressly included, prior to Schwab's acquisition, a similar "reasonable rate" provision.

---

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS                    10

10, 23. This promise is unambiguous, and its breach supports a contract claim. *See In Re Wells Fargo Cash Sweep Litig.*, 2025 WL 1785315, at *2 (N.D. Cal. June 27, 2025) (allowing cash sweep breach of contract claim to proceed based on promise to pay "reasonable rate"); *Valelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2021 WL 240737, at *1-2 (S.D.N.Y. Jan. 25, 2021) (same).

### a. Any Regulatory Basis for Defendants' Promise Does Not Remove Its Status as a Promise

Defendants assert that Schwab's contractual promise to pay a reasonable rate of interest on retirement account CSP deposits is unenforceable because it is required by a federal law without a private right of action. MTD at 16.[5] But that the payment of a "reasonable rate" is also required to qualify for a certain tax treatment pursuant to IRC §4975 does not limit or negate the promise itself, as the courts found in both *Valelly*, 2021 WL 240737, at *1-2, and *Wells Fargo*, 2025 WL 1785315, at *1-2. "When statutory language is included in a contract, it assumes a new legal identity: that of contractual language." *300 DeHaro St. Invs. v. Dep't of Hous. & Cmty. Dev.*, 161 Cal. App. 4th 1240, 1256 (2008).

Contrary to Defendants' arguments, MTD at 16–17, Plaintiffs are not asserting a private claim to enforce IRC §4975. Rather, they allege that Defendants breached a promise that happens to also coincide with an IRC exemption. *Fowler v. Wells Fargo Bank, N.A.*, 2017 WL 3977385, at *4 (N.D. Cal. Sept. 11, 2017) (properly-incorporated regulations are contract terms that form basis of breach of contract claim, even if "regulations on their own do not supply a private right of action"); *Olsen v. Nelnet, Inc.*, 392 F. Supp. 3d 1006, 1016 (D. Neb. 2019) (sustaining breach of contract claim because the "absence of a private right of action

---

[5] Defendants assert that Schwab's "reasonable rate" provision "expressly references" the federal law from which the "reasonable rate" provision is derived. MTD at 16. This is untrue. No particular statute or regulation is expressly mentioned by the Cash Features Program Disclosure Statement's "reasonable rate" term, which only makes generic reference to "applicable legal and regulatory requirements." D.Ex.C at 10.

in a federal statutory or regulatory regime provides no logical basis for dismissal" of state law claim merely because it incorporates some element of federal regulation).

Defendants contend the "reasonable rate" provision is a mandated disclosure, citing 26 C.F.R. § 54.4975-6(b)(3)(i) (MTD at 9-10, 18). But as Defendants concede, TD did not include "reasonable rate" language in its IRA disclosures (MTD at 22), showing it was *not* mandated. Rather, Schwab's promise of a reasonable rate to IRA accountholders was voluntary, even if motivated by a particular tax treatment. *See Morris v. Walmart, Inc.*, 2024 WL 3784113, at *9-11 (D. Mont. Aug. 13, 2024) (disclosure held an enforceable contract because defendant was not required to offer the services triggering the disclosure obligation under federal law).

Defendants' suggestion that the DOL is vested with sole authority to define prohibited transactions and exemptions under §4975, and should determine the reasonableness of Schwab's rates (MTD at 18-19), misses the point. Plaintiffs are not seeking to enforce a tax exemption, but instead Schwab's contractual promise to pay a "reasonable rate"—the province of the jury. *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2025 WL 2222741, at *7 (S.D.N.Y. Aug. 5, 2025) (determination of reasonable cash sweep rate, and comparators, "are questions that a jury must decide"). Defendants' authorities concern whether drug warranty claims are preempted under FDA law, which has no bearing here. MTD at 18 (citing *O'Connor v. Henkel Corp.*, 2015 WL 5922183, at *10 (E.D.N.Y. Sept. 22, 2025); *Welchert v. Am. Cyanamid, Inc.*, 59 F.3d 69, 72 (8th Cir. 1995)).

Schwab's promise that retirement accounts "will be paid a reasonable rate consistent with applicable legal and regulatory requirements" (¶¶42, 63) went beyond generally promising retirement clients it would manage the CSP or pay rates "consistent with applicable legal and regulatory requirements." MTD at 17. Defendants' authorities are not to the contrary. *See Wells Fargo*, 2025 WL 1785315, at *1-2 (distinguishing *Hauptman v. Interactive Brokers*, 2018 WL 4278345, at *7 (S.D.N.Y. June 12, 2018), where contract language did not make a promise but

---

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS                                                    12

merely said "transactions are *subject to* rules and policies of relevant markets").[6]

### b. Mere Publication of Sweep Rates Did Not Make Them Reasonable, Consistent with Prevailing Conditions, or in Clients' Best Interests

Defendants incorrectly assert that because they published sweep rates online, the contractual term "reasonable rate" cannot mean anything more than the published rate.[7] This circularity contradicts basic principles of contract law by rendering superfluous every other term regarding Sweep Program rates. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

Sweep Program rates are not fixed, but vary over time, and merely posting current rates did not render them substantively reasonable. D.Ex.C at 4, 10; D.Ex.D at 6. The agreements and disclosures did not contain any specific "agreed-to" Sweep Program rate—they only referenced a website that, if visited, provided clients with current CSP rates. D.Ex.C at 4 (referring clients to www.schwab.com/sweep for

---

[6] Defendants' additional cases do not help them. *See Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 113 (2011) (plaintiffs sought to enforce standard form contract between drug manufacturers and federal agency required for eligibility in state Medicaid programs as a third-party beneficiary); *Chamber of Commerce v. DOL*, 885 F.3d 360, 382, 384 (5th Cir. 2018) (challenge to DOL's promulgation of impermissible regulation); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (state claims were "indirect attempts at privately enforcing" a federal statutory scheme); *Gurfein v. Ameritrade, Inc.*, 312 F. App'x 410, 413-14 (2d Cir. 2009) (exchange rules the plaintiff sought to enforce were not incorporated into the agreement). *See also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 62, 66-67 (3d Cir. 2008) (dismissing contract claim attempting to enforce FICA as *impliedly* incorporated into employment contracts); *Pressman v. United States*, 33 Fed. Cl. 438, 444 (1995) (finding no implied contract based on generic promise to merely comply with law).

[7] Defendants also argue that the "reasonable rate" term cannot be read in isolation from the disclosure that rates would be set "as low as possible." But under the contracts the rates must still be "consistent with" "prevailing market and business conditions" and "applicable legal and regulatory requirements." D.Ex.C at 10.

---

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS    13

current rates). But that purported disclosure (coupled with Defendants' promise that "[i]nterest rates can change daily") does not amount to an "agreement" to specific variable rates published in the future. In numerous cases, defendants disclosed the "current rate," but the courts sustained breach of contract claims. *Valelly*, 2021 WL 240737; *Wells Fargo*, 2025 WL 1785315; *Mirkin v. Viridian Energy, Inc.*, 2016 WL 3661106, at *8 (D. Conn. July 5, 2016).

### 2. Schwab Promised to Set CSP Rates Consistent with Prevailing Market and Business Conditions

Schwab told clients it would set CSP rates "consistent with prevailing market and business conditions" (¶¶72-76; D.Ex.C at 10, 23), which is an enforceable promise. *See Mirkin*, 2016 WL 3661106, at *8 (sustaining breach of contract claims where contract stated "rates will be based on … market conditions" but defendant "did not actually base its rates on those conditions"); *Claridge v. N. Am. Power & Gas, LLC*, 2015 WL 5155934, at *5-6 (S.D.N.Y. Sept. 2, 2015) (denying motion to dismiss where defendant promised to charge "variable market based rates"); *Herink v. Bluestem Energy Sols., LLC*, 999 N.W.2d 147, 158 (2023) (affirming judgment that defendant breached contract in failing to price membership units "as determined by the Manager in his sole discretion, exercised in a commercially reasonable manner").

In *Dey v. Robinhood Markets Inc.*, 2025 WL 1322716, at *4 (N.D. Cal. Apr. 28, 2025), the court found Robinhood's promise that "interest rates on the [cash sweep] Deposit Accounts will vary based upon prevailing economic and business conditions" supported claims for misrepresentation and breach of the implied covenant. The court explained, "a reasonable customer would understand this statement to mean that interest rates will correlate to market conditions—that is, when market conditions improve, interest rates will go up, and when market conditions falter, interest rates will go down." *Id*. There, Robinhood's rates appeared "entirely divorced from prevailing economic conditions" because they "ranged from

0.01% to 1.5% from June 2022 to present" while the 1-Month U.S. Treasury Rate "exceeded 1.5% and reached over 5% during that same period." *Id*. Thus, the court held that "the interest rates paid to customers are not, in fact, determined by external market conditions but, instead, are more directly affected by Robinhood's choice to increase the amount of fees it extracts for itself." *Id.*[8]

Plaintiffs' allegations are even stronger. ¶¶186-209. For clients with as much as $999,999 in cash, Schwab only paid 0.01% to 0.45% on CSP deposits over the last several years, far lower than Robinhood. ¶189. And like Robinhood, Schwab promised to establish CSP interest rates "consistent with prevailing market and business conditions." ¶¶72-76; D.Ex.C at 10.

Schwab points to disclosures that rates may be set "as low as possible," and "could be zero." MTD at 14.[9] But, as Schwab concedes, and Plaintiffs alleged, Schwab's ability to set rates "as low as possible" is modified by the contractual requirement that such rate-setting is "consistent with prevailing market and business conditions." ¶¶43, 74-76; D.Ex.C at 10, 23. Rules of contract interpretation require this latter provision be given effect so as not to be meaningless. MTD at 14; Cal. Civ. Code §1641, §1643 ("A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."); *Schertzer v. Bank of Am., NA*, 109 F.4th 1200, 1209 (9th Cir. 2024) ("An interpretation which

---

[8] The *Robinhood* plaintiffs did not allege breach of contract, 2025 WL 1322716, at *5-6, but the same facts would support a breach of contract claim. *Moncada v. W. Coast Quartz Corp.*, 164 Cal. Rptr. 3d 601, 610, 612 (2013) (allowing plaintiffs to proceed on misrepresentation and breach of contract claims based on same promise); *JoAnn Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119-21 (1969) (contract's inclusion of language constituting an actionable misrepresentation meant the breach of contract claim "can hardly be disputed").

[9] Defendants falsely assert Plaintiffs "omit or ignore" the language that rates may be "as low as possible." MTD at 13. "As low as possible" appears eight times in Plaintiffs' Complaint. ¶74. TD's contracts lack the "as low as possible" statement.

---

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO                    15
DEFENDANTS' MOTION TO DISMISS

gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable.").

Circumstances where the rate could justifiably be "zero," included when such rates were consistent with "prevailing market and business conditions," including during the portions of 2020 and 2021 when the Federal Funds Rate and other industry benchmarks were near-zero. *See* ¶¶202, 205; MTD at 7; *Beaver v. Omni Hotels Mgmt. Corp.*, 2021 WL 1174719, at *4 (S.D. Cal. Mar. 29, 2021) (denying motion to dismiss breach of contract claim where defendant's "sole and exclusive authority" to "set rental rates" for villas was limited by additional provision requiring that defendant "maximize the rental receipts" on behalf of villa owners).

Schwab asserts that it told clients that rates "can be lower" than other offerings. MTD at 14. But Schwab also told clients rates could be ***higher*** than other offerings (¶77; D.Ex.C at 10), and they were not. *Rodman v. Safeway, Inc.*, 2011 WL 5241113, at *1-3 (N.D. Cal. Nov. 1, 2011) (sustaining breach of contract claim where defendant added "approximately ten percent to the in-store price" for online products, despite disclaimer that prices online are "likely to vary ***either above or below*** the prices in the store").

Schwab also argues that because it told clients that the CSPs are "not intended for long-term investments," and that clients "should also consider higher-yield options for funds not immediately needed," that it was free to set rates as low as it wanted. MTD at 12-14. But that did not eliminate Schwab's independent promise to set CSP rates "consistent with prevailing market and business conditions"—as other courts have held. *Robinhood*, 2025 WL 1322716, at *5 (sustaining claim despite disclaimers that "Banks do not have a duty to offer the highest rates available"; and sweep rates "may be higher or lower than the interest rates available elsewhere"); *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 764 (8th Cir. 2020) ("That [defendant] did not violate the contract in another manner does nothing to prove that

it did not violate the contract [as alleged].").[10]

Schwab's baseless contention that "prevailing market and business conditions" are limited to Schwab's or its affiliate banks' entirely *subjective views* of "market and business conditions," despite "drop[ping] the reference to the 'views of Program Banks" from its disclosures in 2023, is also contrary to basic contract principles. MTD at 13. "Matters which were intentionally omitted from a contract may not be added under the guise of interpretation." *A.B.C. Distrib. Co. v. Distillers Distrib. Corp.*, 154 Cal. App. 2d 175, 185 (1957).  Accordingly, the omitted "views" term does not govern the parties' relationship, and whether Schwab's rates were "consistent with prevailing market and business conditions" must be interpreted objectively. ¶75. Schwab's suggestion that its rates, which were "entirely divorced from prevailing economic conditions," were consistent with its subjective views is implausible and a fact dispute. *Robinhood*, 2025 WL 1322716, at \*4

To the extent there is any fact dispute or ambiguity about Schwab's contractual duties, the motion to dismiss must be denied. Cal. Civ. Code § 1654 ("a contract should be interpreted most strongly against the party who caused the uncertainty to exist"); *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) ("Where [contract] language leaves doubt as to the parties' intent, … the motion to dismiss must be denied.").

---

[10] Defendants' cases are inapposite or support Plaintiffs. In *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 474 (1998), the court found certain contract provisions did not "undercut" other provisions found elsewhere in those agreements. As Plaintiffs are not asserting that Defendants promised any particular rate (MTD at 14) or that rates must be higher than other comparators or benchmarks, the principle in *Shivkov v. Artex Risk Solutions, Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020), and the Restatement (Second) of Contract § 203(c) (1981), that specific terms of a contract limit the scope of more general terms is inapplicable.

### 3.    Defendants Promised to Operate the Sweep Programs in Their Clients' Best Interests

Schwab, in both its Best Interest Disclosure and Relationship Summary: Broker-Dealer disclosure, which were incorporated by reference into its client agreement (¶¶47-48, 60; D.Ex.A at 56), promised CSP clients that "[a]s a broker-dealer, when we provide you with a recommendation, *we have to act in your best interest and not put our interests ahead of yours*."[11] ¶79; Ex.1 at 1; Ex.2 at 2. TD, in its Customer Relationship Summary, also incorporated by reference into its client agreement (¶¶134, 145; D.Ex.D at 1), its promise to clients that, "[w]hen we provide you with a recommendation as your broker-dealer..., we have to act in your best interest and not put our interests ahead of yours." ¶130; Ex.4 at 3; Ex.5 at 2.

### 4.    Plaintiffs Sufficiently Pled Defendants' Breach of Their Contractual Promises

Schwab breached its contractual obligations by (i) failing to pay retirement clients a reasonable rate of interest on CSP deposits and (ii) failing to establish CSP interest rates consistent with prevailing economic and business conditions. Additionally, both Schwab and TD breached their contractual obligations by failing to act in their clients' best interests and, instead, putting their own financial interests first in recommending and operating the Sweep Programs.

Defendants breached their promises based on Plaintiffs' comparison of Defendants' sweep rates to other brokerages' sweep rates, and to "prevailing market and business conditions" through appropriate indicators like the Federal Funds Rate, U.S. Treasury Bill yields, and repurchase agreement rates. ¶¶202, 205, 209.

---

[11] Defendants do not dispute these provisions create enforceable obligations. MTD at 12 n.6. Any argument that this contractual "best interest" duty is limited to recommendations about "securities" pursuant to Reg. BI also fails (MTD at 31) because the "best interest" provisions specifically reference the CSP. Schwab's Cash Features Program Disclosure Statement also refers to the CSP as an "investment." D.Ex.C at 3 (Cash Features Program is a service to "automatically *invest*, or 'sweep,'" free cash into a "liquid *investment* to potentially earn interest").

---

Schwab's rates did not exceed 0.45% from 2019 to 2024, and TD's rates did not exceed 0.34% during the same period. ¶¶188-89. In contrast, an index of rates paid by five brokerages that swept cash to *unaffiliated* banks was close to 2.0% in 2023 and 2024. ¶¶194-95.[12] A comparison of Defendants' rates to an industry-wide analysis of sweep programs (¶197) also shows that, in 2023 and 2024, the index was up to 4.44 times higher than Defendants' rates. *Id.*; *Valelly,* 2021 WL 240737, at *1-2 (contract claim proceeded where Merrill Lynch paid 0.14%, and comparators paid 0.19% to 0.38%); *Wells Fargo*, 2025 WL 1785315, at *2 (contract claim proceeded given industry-wide analysis of cash sweep programs, and "five comparable firms that swept cash into unaffiliated banks paid substantially higher rates").

Defendants' Sweep Program rates were consistently far below other indicators, such as the Federal Funds Rate, which rose sharply from 2022 through 2024, and the yield on Treasury Bills and repurchase agreements—two benchmarks the DOL uses to define "reasonable." ¶¶69, 202-09; *Wells Fargo*, 2025 WL 1785315, at *2 ("when the federal funds rate increases significantly, what is considered 'reasonable' should also increase as well").[13]

Schwab's admission that its "substantive fiduciary obligations related to investment decisions" for SIP clients required cash sweep options with higher rates (3.93% as of May 2025 (¶213)) (MTD at 21) supports Plaintiffs' allegation that Defendants' CSP rates were unreasonable. Defendants owed substantively similar

---

[12] Brokerages that use unaffiliated banks for sweep programs, like Fidelity, "paid interest rates that more closely resembled arm's-length negotiations," and are more appropriate comparators. ¶196.

[13] Contrary to Defendants' assertion that their Sweep Program rates followed similar trajectories as the comparators (MTD at 21), Schwab and TD stopped raising rates, even as comparators' rates continued to rise sharply in early 2023. ¶¶194, 202, 205. Schwab even lowered its rate to 0.05% in December 2024—a fraction of Schwab's 0.30% rate in January 2019—even though when the Federal Funds Rate had increased from just above 2% to above 4% during that same span. ¶¶191, 194, 202.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO                              19
DEFENDANTS' MOTION TO DISMISS

obligations to all CSP participants (not just SIP accountholders). Ex.6 at 1 ("Reg BI for broker-dealers and the IA fiduciary standard for investment advisers are drawn from key fiduciary principles that include an obligation to act in the retail investor's best interest and not to place their own interests ahead of the investor's interest."). Defendants' attempt to distinguish between (i) cash swept from SIP accounts as being "invested for a longer term," versus (ii) CSP swept cash, makes no sense because Schwab referred to CSP swept cash as an "investment." D.Ex.C at 3. Indeed, the SIP cash sweep feature is a deposit account at Charles Schwab Bank, *i.e.*, similar to the CSP sweep feature.  The SIP comparator shows Schwab could have, but did not, fulfill its duties.

Defendants do not dispute the comparable rates. Instead, they contend Plaintiffs do not provide adequate detail about the comparable programs or that Plaintiffs compare "apples-to-oranges." MTD at 19-21.[14] But the comparable brokerages offer cash sweep programs that are not materially different from Defendants', and Defendants' assertion that other products are not "apt comparisons is a question of fact unsuitable for resolution on a motion to dismiss." *Silva v. Evonik Corp.*, 2020 WL 12574912, at *6 (D.N.J. Dec. 30, 2020); ¶¶193-99.[15] Indeed, Plaintiffs' index of comparable brokerages concerns the same product (sweep

---

[14] Defendants' contention that courts reject comparisons to other investment options is misguided. MTD at 20. Plaintiffs draw no quantitative comparison to money market funds (*Valelly*, 2021 WL 240737, at *52), and the *Robinhood* court cited Treasury Bills as a comparator in upholding the plaintiffs' claim. 2025 WL 1322716, at *4. *Tibble v. Edison International* rejected the plaintiffs' argument on summary judgment that mutual funds were "categorically imprudent" investments, even though the same beneficiaries previously "requested their 'inclusion in the Plan'"— and is therefore inapposite. 729 F.3d 1110, 1134 (9th Cir. 2013)

[15] "Rule 8 does not require a plaintiff to plead facts," such as a line-by-line comparison of account features, "to rebut all possible lawful explanations for a defendant's conduct." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595-96 (8th Cir. 2009) (rejecting district court's conclusion that funds could have had "higher fees for any number of reasons, including ... more services offered").

---

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS                    20

accounts) and comes from the same source the *Valelly* court relied on to uphold a breach of contract. 2021 WL 240737, at *1; *Valelly*, 2025 WL 2222741, at *7 (denying summary judgment because questions of appropriate benchmarks and reasonableness of sweep rates are "questions that a jury must decide").

### 5.    Plaintiffs Have Not Waived Their Claims or Ratified Defendants' Breach

Under California and Nebraska law, "[w]aiver is the intentional relinquishment of a known right after knowledge of the facts." *Vanguard Logistics Servs. (USA) Inc. v. Groupage Servs. of New England, LLC*, 2023 WL 4843070, at *17 (C.D. Cal. July 28, 2023); *Eagle Partners, L.L.C. v. Rook*, 921 N.W.2d 98, 108 (2018); *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) ("mere silence, oversight or thoughtlessness in failing to object to a breach" will not support finding of waiver).

Here, the record is devoid of facts demonstrating knowledge or intent to waive. "Under California law, a party must prove waiver by clear and convincing evidence" and waiver "should not lightly be presumed." *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2014 WL 2199428, at *9 (S.D.N.Y. May 23, 2014). "Acceptance of defective performance, without more, does not prove intent to relinquish the right to full performance." *Boat Owners Ass'n of U.S. v. Sea Ventures of Cal., Inc.*, 2000 WL 33179449, at *7 (C.D. Cal. Aug. 7, 2000) (party claiming waiver must show "knowledge of the facts basic to the exercise of the right waived" and "intent to relinquish" it); *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 955–56 (N.D. Cal. 2009) (denying summary judgment as to waiver; rejecting argument that "plaintiffs consented explicitly to the bank's actions under the account agreement and then consented implicitly by failing to close their accounts after the disputed overdrafts occurred"). Moreover, when one party "feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided or continue its performance

---

and sue for damages." *In re Transact, Inc.*, 2014 WL 3888230, at *7 (C.D. Cal. Aug. 6, 2014).

Defendants' attempt to distinguish the *Wells Fargo* cash sweep decision falls flat. MTD at 22. As in *Wells Fargo*, "nothing in the complaint suggests that [P]laintiffs knew about the alleged breach and intentionally chose to continue accepting the interest rates." 2025 WL 1785315, at *1 (rejecting identical waiver argument). Defendants' cherry-picked, irrelevant provision, purporting to require ten days' notice after receipt of an account statement, serves them no better. MTD at 22. That provision states:

> You acknowledge that you have an affirmative duty to promptly review any and all trade confirmations and account statements ***for accuracy and completeness*** and to immediately notify us of any items you believe to be ***in error***…. You agree that we are not liable for any damages or market fluctuations resulting from ***an error*** you fail to timely report to us or to your delay in reporting an error to us.

D.Ex.A at 53; D.Ex.D at 1 (similar provision in TD Client Agreement).

The term "error" does not apply to Defendants' willful under-payment of sweep rates. *See Error*, Black's Law Dictionary (12th ed. 2024) ("a belief that what is false is true or that what is true is false; mistake"). Plaintiffs are not alleging "inaccuracy" or "error" in the calculations, but that Defendants paid unreasonably low rates that were neither "consistent with market and business conditions," nor in clients' best interest. *Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*, 2020 WL 639613, at *12 (D. Neb. Feb. 11, 2020), *aff'd*, 984 F.3d 595 (8th Cir. 2020) (denying summary judgment based on defendant's "errors or discrepancies" provision where plaintiffs argued it covered "only mistaken charges"). Defendants' waiver assertion also raises fact questions not resolvable on a motion to dismiss. *Stark v. Soteria Imaging Servs., Inc.*, 276 F. Supp. 2d 989, 996 (D. Neb. 2003) ("The issue of waiver presents a factual dispute"); *hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 963 (N.D. Cal. 2022) (similar).

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS                                                   22

Defendants' cases are distinguishable. In *Roling v. E\*Trade Securities LLC*, 860 F. Supp. 2d 1035, 1039-40 (N.D. Cal. 2012), on summary judgment, the defendants established the plaintiffs had actual knowledge but accepted performance. Defendants cannot show Plaintiffs had actual knowledge, and whether Defendants breached their obligations can only be determined by reference to facts external to Plaintiffs' accounts. *Hopgood v. Experian Information Solutions, Inc.*, 716 F. Supp. 3d 845, 850-51 (C.D. Cal. 2024), did not address whether a party ratified a breach, and instead found the plaintiff ratified an otherwise voidable contract by re-asserting control over a previously-terminated account. *Id.* Similarly, *In re Drexel Burnham Lambert Group, Inc.*, 157 B.R. 539, 545 (S.D.N.Y. 1993), rejected the plaintiff's argument that the defendant was equitably estopped from invoking ratification. Plaintiffs make no such allegation.

### 6.    Plaintiffs Have Sufficiently Pled Injury

Plaintiffs adequately allege injury and damages. Defendants paid interest rates on Plaintiffs' swept cash that were significantly lower than those they contractually promised, thereby depriving Plaintiffs the benefit of their bargain. ¶¶9, 15, 149, 177, 181. *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 966 (N.D. Cal. 2021) ("a benefit of the bargain measure of damages is intended to … place him in the same position he would have been in had the promisor performed the contract").

Defendants' argument that Plaintiffs "[took] no action" on their sweep deposits and "earned returns" on that cash (MTD at 23) re-packages their waiver and argument, and fails for the same reasons. Defendants' reliance on *Welch v. TD Ameritrade Holding Corp.*, 2009 WL 2356131 (S.D.N.Y. July 27, 2009) and *DeBlasio v. Merrill Lynch & Co. Inc.*, 2009 WL 2242605 (S.D.N.Y. July 27, 2009), is unavailing. Neither *Welch* nor *DeBlasio* involved breach of an express contract, and the plaintiffs could not point to contractual provisions to support "contract-based expectation[s]." *Welch*, 2009 WL 2356131 at \*51; *DeBlasio*, 2009 WL 2242605 at \*37-39.  Defendants' quotes from those cases also do not address the question of

---

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO                    23
DEFENDANTS' MOTION TO DISMISS

injury. *Welch*, 2009 WL 2356131 at \*7; *DeBlasio*, 2009 WL 2242605, at \*31.

### C.    Plaintiffs State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

A claim for breach of the implied covenant of good faith and fair dealing has the same elements as breach of contract, except instead of breach of an express contractual duty, "the plaintiff must show … that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Min v. Selene Fin., LP*, 2024 WL 1521239, at \*6 (N.D. Cal. Apr. 8, 2024); *Stromquist v. Progressive Universal Ins. Co.*, 2023 WL 2537838, at \*5 (D. Neb. Mar. 16, 2023) (the "justifiable expectations of the parties" define the nature and extent of the implied covenant). Plaintiffs may plead their claim by alleging "a motive for [defendant] to frustrate deliberately and consciously the purpose of the parties' … contracts." *Neurobrands, LLC v. Am. Bottling Co.*, 2022 WL 17219991, at \*5 (C.D. Cal. Feb. 25, 2022) (Aenlle-Rocha, J.).

Plaintiffs meet such burden. The contracts required Defendants to pay rates based on prevailing market conditions (¶¶43, 74, 126) and act in clients' best interests. ¶¶79, 154. Plaintiffs pled their reasonable expectation that Defendants would not use their discretion to pay drastically low rates and retain essentially all returns, and that Defendants breached such expectations and failed to exercise their discretion in good faith. *See* ¶¶116, 215-16, 271. [16]

As Judge Lin held in another cash sweep case:

> [The agreement] states that Robinhood pays its customers an interest rate based on the "amount the Program Banks are willing to pay" and the ***"prevailing economic and business conditions,"*** less the fee Robinhood extracts for itself…. [T]he natural reading of these statements is that the interest rates paid to customers are determined

---

[16] Unlike *Dick v. Koski Pro. Group, P.C.*, where plaintiff "failed to identify any express terms" tied to alleged implied covenant breach, TD expressly agreed to "determine[]" interest rates and act in clients' "best interest[s]." 950 N.W.2d 321, 360 (2020); ¶¶124-25, 218; D.Ex.E.

---

based on the rates set by the Program Banks and prevailing market conditions. ***Thus, Robinhood plausibly breached the implied covenant by exercising its discretion to set its own fee in a manner that frustrated those provisions of the contract and ran contrary to customers' reasonable expectations.***

*Robinhood*, 2025 WL 1322716, at *5.[17] Judge Robinson sustained an implied covenant claim in *In re LPL Financial Cash Sweep Litigation* because LPL's sweep rates remained low as "interest rates paid by other brokerages who swept client cash balances into unaffiliated banks generally rose to track the movement of the market." 2025 WL 2103545, at *19 (S.D. Cal. June 30, 2025).

Defendants contend Schwab's contract provision providing it would set interest rates "as low as possible" defeats Plaintiffs' implied covenant claim. MTD at 26. But, as discussed above, that provision is modified by Schwab's promise that the rate will be consistent with "prevailing market and business conditions." ¶¶72-76; D.Ex.C at 10, 23. *See EFG Bank AG, Cayman Branch v. Transamerica Life Ins. Co.*, 2017 WL 3017596, at *9 (C.D. Cal. July 10, 2017) (contract terms stating defendant "may use rates lower than these Guaranteed Maximum Monthly Deduction Rates" did not obviate obligation of good faith); *Brighton Trs. v. Transamerica Life Ins. Co.*, 2019 WL 6315541, at *12-13 (C.D. Cal. Aug. 28, 2019) (sustaining breach of implied covenant claim where defendant raised rates when consideration of enumerated cost factors would support a decrease); *Gutierrez*, 622 F. Supp. 2d at 954 (bank's posting withdrawals in descending size to maximize overdraft penalties breached implied covenant, despite contract provision permitting bank to post items "in any order the bank chooses").[18]

---

[17] Contrary to Defendants' assertion (MTD at 26), *Robinhood*'s holding did not rest solely on the provision that the broker would pay its customers "an interest rate based on the 'amount the Program Banks are willing to pay.'" 2025 WL 1322716, at *5-6.

[18] Whether Defendants acted with motive is also a question of fact. *Haggarty v. Wells Fargo Bank, N.A.*, 2011 WL 445183, at *2 (N.D. Cal. Feb. 2, 2011).

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS    25

### 1.  Plaintiffs May Pursue Their Implied Covenant Claim in the Alternative to Their Contract Claim

Defendants argue Plaintiffs' implied covenant claim is duplicative of their contract claim. But as Judge Chhabria held in a similar cash sweep case: "if there is a dispute over the meaning of the contract's express terms, there is no reason to bar a plaintiff from pursuing both types of claims in the alternative." *Wells Fargo*, 2025 WL 1785315, at \*3 (sustaining both claims). Here, the parties dispute the meaning and significance of the relevant terms of the applicable contracts. *Compare* MTD at 7 (claiming contracts gave Defendants unfettered discretion) *with* ¶¶72-76 (alleging discretion cabined by promise to pay rates "consistent with prevailing market and business conditions"). Because Plaintiffs "allege facts showing a failure or refusal to discharge contractual responsibilities, prompted … by a conscious and deliberate act," Plaintiffs' implied covenant claim is not duplicative. *EFG Bank*, 2017 WL 3017596, at \*9; ¶¶220-37.

### 2.  The Implied Covenant Claim Is Not a Fraud Claim

Defendants' assertion that the implied covenant claim is subject to Rule 9(b)'s particularity requirement for pleading fraud is meritless. "Fraud is not an essential element" for a breach of implied covenant of good faith and fair dealing. *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2016 WL 6393503, at \*7 (N.D. Cal. Oct. 28, 2016). Nor does alleging bad faith subject a claim to 9(b)'s standards. *Incase Designs, Inc. v. Mophie, Inc.*, 2013 WL 12173931, at \*2 (N.D. Cal. July 1, 2013) ("particularity requirements of Rule 9(b) do not apply" to unclean-hands defense based on bad faith). Defendants' authority is inapplicable. In *Cerco Bridge Loans 6 LLC v. Schenker*, 768 F. Supp. 3d 559, 580 (S.D.N.Y. 2025), the plaintiff alleged an "omission with intent to deceive," a "quintessential averment of fraud." Plaintiffs' claims are not based on misrepresentation, omission, intent to deceive, or fraud.

---

### D.     Plaintiffs State a Claim for Breach of Fiduciary Duty

"The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *Steenwyk v. Steenwyk*, 2024 WL 2206338, at *5 (C.D. Cal. Mar. 28, 2024). The existence of a fiduciary relationship is an issue of fact. *In re Daisy Sys. Corp.*, 97 F.3d 1171, 1178 (9th Cir. 1996).

### 1.     Defendants Owed Fiduciary Duties to All Sweep Program Clients

Defendants' disclosures acknowledged their fiduciary duties to clients with advisory and retirement accounts, consistent with the IAA and the SEC Interpretation Regarding Standard of Conduct for Investment Advisers,[19] and that the Sweep Programs were subject to such fiduciary duties. ¶¶84-87, 156-68. Accordingly, Plaintiffs adequately pled a breach of fiduciary duty. *Wells Fargo*, 2025 WL 1785315, at *3 ("For advisory clients … Wells Fargo has a fiduciary duty established by contract.…Wells Fargo breached this duty by sweeping cash into the cash sweep program instead of recommending a better investment vehicle.").

Similarly, Defendants acknowledged their obligations to act in all their clients' best interests, which are fiduciary in nature, under Reg. BI.[20] ¶¶88-94, 151-55; Exs.1-3. *See Su v. Henry Global Consulting Grp.*, 2021 WL 2712366, at *2 (C.D. Cal. Jul. 1, 2021) ( "the obligation of the fiduciary extends beyond mere fairness and honesty but instead requires the fiduciary to give priority to the best interest of the beneficiary"); *In re Burgess*, 106 B.R. 612, 618 (Bankr. D. Neb. Jul. 27, 1989) (fiduciary duty requires acting in the best interest of the principal).[21]

---

[19] 84 Fed. Reg. 33669, 33669 (July 12, 2019), 17 C.F.R. 276 ("Under federal law, an investment adviser is a fiduciary.").

[20] 84 Fed. Reg. 33318 (July 12, 2019), 17 C.F.R. § 240.15l-1.

[21] Defendants' arguments that they are not subject to the best-interest duties set forth in Reg. BI—when they stated the opposite to their clients in contemporaneous

Defendants acted in an advisory capacity when they recommended their clients use the Sweep Programs. ¶¶79-81, 88-95, 105-06, 130-31, 153-58. Fiduciary duties apply when agent provides investment advice. *See Leboce, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F.2d 605, 607 (9th Cir. 1983); *Knowles v. TD Ameritrade Holding Corp.*, 427 F. Supp. 3d 1070, 1081 (D. Neb. Nov. 15, 2019) ("Investment advisors are generally required under Nebraska law to … avoid conflicts of interest [and] act in their client's best interest.").

Defendants acknowledged that enrolling customers in their default Sweep Programs was a recommendation when they disclosed their firm-level conflicts of interest because they earned more money when recommending clients maintain cash in the Sweep Programs. ¶¶80, 130. Defendants' acknowledgment of this recommendation and their conflicts supports they owed a fiduciary duty. Otherwise, there would be no need for such disclosures. ¶¶79-81, 130-31.[22] Defendants' mere disclosure of a conflict of interest (MTD at 7-8) was not enough to satisfy their fiduciary obligations because they also promised to mitigate the conflict and put clients' interests ahead of their own. ¶¶91, 130. The existence of Defendants' fiduciary duties is further supported by the SEC's Cease-and-Desist Order against Wells Fargo, where the SEC stated that participation in a cash sweep program constitutes investment advice subject to a fiduciary duty. Ex.7.[23]

Defendants deny they made recommendations or provided investment advice in the Sweep Programs because "the challenged programs do not involve

disclosures—should be rejected. Similarly, Defendants' contention that Plaintiffs' enrollment in the CSP was not a recommendation (MTD at 30-31) conflicts with their representations to clients, as discussed above.

[22] 84 Fed. Reg. 33669 (July 12, 2019), 17 C.F.R. 276; 84 Fed. Reg. 33318 (July 12, 2019), 17 C.F.R. § 240.15l-1.

[23] *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1232 (C.D. Cal. 2015) (taking judicial notice of Cease-and-Desist Order that supported allegations).

'securities,'" and Plaintiffs' discretion to maintain cash balances in the Sweep Programs supposedly precludes a fiduciary duty. MTD at 30-31. But Defendants' fiduciary duty attaches to their conduct (i.e., the recommendation), and not the client's response to it, and the automatic enrollment feature establishes that the Sweep Program account feature is a recommendation.[24] Defendants represented to their clients that the Sweep Programs were an investment recommendation (¶¶79-81, 130-31)[25] and, as described above, Defendants acknowledged their duties as a broker-dealer and thus their obligations under Reg. BI. ¶¶79-81, 130-31; Ex.1 at 1; Ex.4 at 3.

Defendants also cannot walk away from the fact their disclosures set forth their fiduciary duties to act in their clients' best interest. Those disclosures—not Reg. BI or the IAA—give rise to Plaintiffs' claims here.

### 2. Defendants Agreed to Act as "Agents" Concerning the CSPs

An agency relationship creates a presumption of a fiduciary duty. *Daisy Sys.*, 97 F.3d at 1178; *see also Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, 2012 WL 12883616, at *17 (C.D. Cal. Feb. 23, 2012). A complaint that alleges an agency relationship sufficiently pleads the existence of a fiduciary duty. *Gerhardt v. Weiss*, 247 Cal. App. 2d 114, 116-17 (Ct. App. 1966). This duty is broad, requiring the

[24] *See* FINRA Regulatory Notice 11-02 at 2-3 (Jan. 2011) ("important factor" in determining whether a communication is a "recommendation" is whether it "reasonably would be viewed as a suggestion that the customer take action or refrain from taking action regarding a security *or investment strategy*"), available at https://www.finra.org/sites/default/files/NoticeDocument/p122778.pdf.

[25] Defendants assert that neither the IAA nor Reg. BI have private rights of action. MTD at 30. But Plaintiffs do not bring claims under the IAA or Reg. BI. Instead, Plaintiffs cite provisions that evidence the fiduciary character of the relationships here, and that Defendants have adopted into their relationship with their clients vis-à-vis the Sweep Programs. ¶¶88-93, 151-55. Here, as in *Wells Fargo*, the fiduciary duties arise from the nature of the parties' relationship.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO    29
DEFENDANTS' MOTION TO DISMISS

agent "to act loyally for the principal's benefit in *in all matters connected with the agency relationship*." *Beatbox Music Pty, Ltd. v. Labrador Ent., Inc.*, 2020 WL 6468447, at *12 (C.D. Cal. Jul. 17, 2020).

Defendants stated they were acting as the "agent," and therefore a fiduciary, for their clients in establishing, maintaining, and operating their cash sweep accounts. ¶¶38, 52, 96-98, 123-24, 136, 139, 141, 147-49. For example, the CSP Disclosure Statement stated, "Schwab is acting *as your agent in establishing the Deposit Accounts* with the Affiliated Banks and in depositing and withdrawing funds." ¶97; D.Ex.C at 11. Schwab denies its clients the ability to communicate with or instruct the Program Banks, and the clients cannot withdraw their funds from the banks without Defendants. ¶100. Defendants' agency was far broader than the ministerial acts of creating an account or sweeping funds (as Defendants argue, MTD at 28).

Defendants' arguments are contrary to California and Nebraska law, whereby an agent's fiduciary duties apply to "all matters connected with the agency relationship." *Beatbox*, 2020 WL 6468447, at *12. Defendants' setting Sweep Program rates is "connected with the agency relationship" between Defendants and their clients.[26] *Id*. In Defendants' cited authority, *Leboce*, the Ninth Circuit stated "[i]t is where the agent for all practical purposes controls the account that California law imposes fiduciary obligations." 709 F.2d at 607.[27] Plaintiffs allege such control

---

[26] Defendants concede an agent is a fiduciary of its principal by citing case law that states just that. *Cusano v. Klein*, 280 F. Supp. 2d 1035, 1041 (C.D. Cal. 2003), *aff'd*, 153 F. App'x 998 (9th Cir. 2005) ("An agent is a fiduciary with respect to matters within the scope of his agency."); *Leboce*, 709 F.2d at 608 ("Leboce authorized Merrill Lynch to act as its agent with strictly limited responsibilities."); *see also Barta v. Kindschuh*, 518 N.W.2d 98, 100 (Neb. 1994).

[27] The California Court of Appeals rejected *Leboce's* narrow view of broker fiduciary duties. *Duffy v. Cavalier*, 215 Cal. App. 3d 1517, 1536 n.10 (Ct. App. 1989).

---

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

over the CSPs. ¶¶97, 110, 147, 149, 180, 210.[28]

### 3. Defendants Exercised Control and Discretion Over Both Sweep Programs

Defendants' *de facto* control and discretion over all aspects of both Sweep Programs further give rise to fiduciary duties. *Leboce*, 709 F.2d at 607; *Woodruff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1989 WL 224581, at *4 (D. Neb. Jul. 14, 1989) (fiduciary claim turned on "defendants' control" over plaintiff's account); *Mihara v. Dean Witter & Co.*, 619 F.2d 814, 821-22 (9th Cir. 1980) (focusing on "a pattern of de facto control by the broker," who has a duty not to place his interests over those of his client").

Defendants' complete control and discretion applied to every aspect of both Sweep Programs, including: (i) establishing, maintaining, and operating the Sweep Programs (¶¶96-110, 146-49); (ii) determining what sweep vehicles were available (¶¶99, 147); (iii) automatically enrolling clients in them (¶¶105, 149); (iv) selecting the Program Banks (¶¶99, 101, 103, 147); (v) determining the rates paid to clients, including rates paid by affiliated banks (¶¶103, 147); and (vi) operating the deposit accounts, including deposits, withdrawals, and monitoring FDIC limits (¶¶104, 147,

---

[28] Defendants' cases regarding nondiscretionary broker relationships are inapposite or support Plaintiffs. *Bissell v. Merrill Lynch & Co., Inc.*, 937 F. Supp. 237, 246 (S.D.N.Y. 1996) (determinative issue is whether broker owes investor fiduciary duty with respect to "specific practices … in dispute."); *Woodruff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F. Supp. 181, 185 (D. Neb. 1989) (finding fiduciary duty based on whether "broker exercised control over [the client's] account"); *Apollo Cap. Fund LLC v. Roth Cap. Partners, LLC*, 70 Cal. Rptr. 3d 199, 214 (2007) (acknowledging "long-settled rule" that "stockbroker owes a fiduciary duty to his or her customer," but complaint did not allege the investors had a preexisting relationship with the broker); *Antczak v. TD Ameritrade Clearing, Inc.*, 2018 WL 2298494, at *6 (E.D. Pa. May 21, 2018) (rejecting plaintiff's suitability claims against clearing house because it lacked discretion over the transactions). The brokers in those cases did not undertake an agency relationship and did not exercise discretion and control.

---

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

31

149).

### E.    Plaintiffs Sufficiently Allege Unjust Enrichment

"[T]he elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another." *Simple Design Ltd. v. Enerjoy Ltd.*, 710 F. Supp. 3d 817, 825 (C.D. Cal. 2024) (Aenlle-Rocha, J.); *Stark*, 276 F. Supp. 2d at 993-94. Plaintiffs expected to receive reasonable and market-based interest rates on their swept cash. Instead, Defendants paid unreasonably low rates and were unjustly enriched. *Yang v. Pan*, 2025 WL 819605, at *4 (C.D. Cal. Jan. 6, 2025) (defendants reaped "unfair benefits" at Plaintiff's expense).[29]

Defendants' challenges are meritless. First, Defendants argue that unjust enrichment is not a standalone claim under California law. But "when a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Go Maps, Inc. v. Ins. Claims Assocs. Agency Inc.*, 2023 WL 3149267, at *4 (C.D. Cal. Feb. 28, 2023) (Aenlle-Rocha, J.) (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)).

Second, Defendants contend unjust enrichment requires no adequate remedy at law. California courts have rejected this argument and allowed unjust enrichment claims seeking restitution via money damages. *Jordan v. Wonderful Citrus Packing LLC*, 2018 WL 4350080, at *5 (E.D. Cal. Sept. 10, 2018) (collecting cases). "[R]estitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it … is unenforceable or ineffective for some reason." *Glenn v Hyundai Motor Am.,* 2016 WL 7507766, at *5 (C.D. Cal. Nov. 21, 2016). Even if Plaintiffs' unjust enrichment claim arises in equity, they may plead an equitable claim for unjust enrichment while alleging an adequate remedy at law. *Veritas Techs. LLC v. Cushman & Wakefield, Inc.*, 2022 WL 222527, at *11 (N.D. Cal. Jan. 25, 2022).

---

[29] Defendants contend they obtained what was "permissible under the terms of an express contract." MTD at 32. But what was "permissible" is in dispute.

Third, Defendants argue Plaintiffs may not plead unjust enrichment and contractual claims in tandem. MTD at 32. But it is well-established that plaintiffs may plead claims in the alternative. *Go Maps*, 2023 WL 3149267, at *4 (permitting pleading in alternative); *Klug v Watts Regulator Co.*, 2015 WL 13893247, at *4 (D. Neb. Dec. 29, 2015) (similar). Defendants' cited cases are irrelevant to whether Plaintiffs properly plead in the alternative. *Schreiber Bros. Hog Co., LLC v. Schreiber*, 980 N.W.2d 890, 906 (2022); *DeBlasio*, 2009 WL 2242605, at *40.[30]

Defendants also argue the unjust enrichment claims against Schwab should be dismissed because Schwab is not responsible for its subsidiaries. But Defendants' authorities—not involving California or Nebraska law—create no blanket rule. *Encore Rehab. Servs., LLC v. Moorhead Operations LLC*, 2019 WL 13235827, at *5 (D. Minn. Feb. 24, 2019) ("the corporate veil may be pierced"). In any event, "[p]arent companies may be liable for … the unlawful acts of subsidiary companies that act as their agents." *City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1062 (C.D. Cal. 2014). The Complaint alleges that each defendant, including Schwab, benefitted from the conduct alleged. ¶¶11, 185, 220-37.[31]

## V.    **CONCLUSION**

Defendants' motion should be denied. If the Court grants any part of Defendants' motion, Plaintiffs respectfully request leave to amend under Rule 15. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005).

---

[30] Insofar as Defendants argue Plaintiffs must allege any contract is unenforceable (MTD at 32 n.13), Plaintiffs pled their unjust enrichment claim in the alternative. ¶¶367-71.

[31] For these same reasons, Plaintiffs' breach of contract and fiduciary duty claims should be sustained against Schwab.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS                33

Dated: August 15, 2025

Respectfully submitted,

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano (*pro hac vice*)
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Salvatore J. Graziano (*pro hac vice*)
John Rizio-Hamilton (*pro hac vice*)
Adam H. Wierzbowski (*pro hac vice*)
Michael D. Blatchley (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
salvatore@blbglaw.com
johnr@blbglaw.com
adam@blbglaw.com
michaelb@blbglaw.com

Jonathan D. Uslaner (Bar No. 256898)
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3481
jonathanu@blbglaw.com

Thomas I. Sheridan, III (*pro hac vice*)
Sona R. Shah (*pro hac vice*)
**SIMMONS HANLY CONROY LLP**
112 Madison Avenue
New York, NY 10016
Telephone: (212) 784-6404
Facsimile: (212) 257-8482
tsheridan@simmonsfirm.com
sshah@simmonsfirm.com

Alan L. Rosca (*pro hac vice*)
**ROSCA SCARLATO LLC**
2000 Auburn Drive Ste 200
Beachwood, OH 44122
Telephone: (216) 946-7070
arosca@rscounsel.law

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

34

Paul J. Scarlato (*pro hac vice*)
**ROSCA SCARLATO LLC**
161 Washington Street, Suite 1025
Conshohocken, PA 19428
Telephone: (216) 946-7070
pscarlato@rscounsel.law

*Counsel for Plaintiffs Mary Loughran, Rosemary Orlando, Edward Carr, Donald Saunders, Michael Davis and Terrance McDonald*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Salvatore J. Graziano, write to certify that the foregoing Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated Class Action Complaint complies with the Stipulated Order entered by this Court on June 30, 2025 (ECF No. 86) because this brief contains 10,998 words.

*/s/ Salvatore J. Graziano*